IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

VANESSA MARIE RICHARDSON                                              PLAINTIFF

vs.                                                 CIVIL ACTION NO. 3:14-cv-0077-SAA

CAROLYN W. COLVIN[1],
COMMISSIONER OF SSA                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff Vanessa Marie Richardson has applied under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying her applications for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI. Docket 8, p. 139-147. Richardson filed her applications on November 23, 2010, asserting an onset date of April 3, 2009. Docket 8, p. 139, 141. Her onset date was later amended to July 17, 2010. Docket 8, p. 49. The Commissioner denied her claim initially and on reconsideration. Docket 11, pp. 76-89, 92-95.

Plaintiff challenged the denial of benefits and filed a request for a hearing before an Administrative Law Judge (ALJ). Docket 8, pp. 99-100. She was represented by an attorney at the administrative hearing on July 2, 2012. Docket 8, p. 42-75. The ALJ issued an unfavorable decision on January 24, 2013. Docket 8, p. 19-28. The Appeals Council denied her request for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

review. Docket 8, p. 1-5. Plaintiff filed the instant appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on December 22, 1972 and was thirty-nine years old on the date of the ALJ's hearing decision. She completed high school and one year of college. Docket 8, p. 48. She was previously employed as a truck loader and plane de-icer. Docket 8, p. 48. She claimed disability due to "bad pain in left knee due to surgery." Docket 8, pp. 169.

The ALJ determined that plaintiff suffers from "severe" impairments of left knee osteoarthritis. Docket 8, p. 21, Finding No. 3. Despite finding she had a severe impairment, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Docket 8, p.22, Finding No. 4. Relying on the evidence in the record, including hospital records, physical therapy records and treatment notes from Dr. Pravinchandra P. Patel, M.D., along with the plaintiff's testimony, the ALJ concluded that plaintiff retained the residual functional capacity [RFC] to

> lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; she could never climb, kneel, crawl, and could occasionally balance, stoop, and crouch; and she must never work around heights and moving machinery.

Docket 8, pp. 22-23, Finding No. 5. The ALJ found the plaintiff's subjective complaints less than fully credible and that her allegations of stringent functional limitations were greatly

disproportionate to the objective medical evidence.  Docket 8, pp. 26.

Relying on the answers to written interrogatories from a vocational expert ("VE"), the ALJ held that plaintiff's "severe" impairments prevented her from returning successfully to her past relevant work.  Docket 8, p. 26, Finding No. 6; pp. 201-206.  The ALJ then found that considering the plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that the plaintiff is capable of performing.   Docket 8, p. 26-27, Finding No. 10.  Examples of these jobs included a surveillance system monitor, laminator and final assembler.  Docket 8, p. 26.  Accordingly, the ALJ determined that the plaintiff was not disabled as defined by the Social Security Act.  Docket 8, p. 27. Finding No. 11.

The plaintiff requested review by the Appeals Council.  Docket 8, p. 15.   After reviewing the record, including medical records from Mississippi Orthopaedics and Sports Medicine and a prescription for Voltaren and Synvisc-One which plaintiff submitted as new evidence, the Appeals Council found there was no basis for changing the ALJ's decision and denied plaintiff's request for review.  Docket 8, p. 2.  Plaintiff now appeals to this court claiming (1) the ALJ failed to fully develop the record by not requesting a consultative examination; (2) his RFC was improper and not supported by substantial evidence; (3) he erred in finding the plaintiff was less than fully credible; (4) he mischaracterized plaintiff's testimony concerning her functional capabilities; and (5) the Appeals Council erred when it concluded plaintiff's new evidence was not material and declined to remand to the ALJ.  Docket 14.

## II.  STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8] 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir.

---

[9]*Muse*, 925 F.2d at 789.

[10]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

1. <u>ALJ's Duty to Fully Develop the Record</u>

Plaintiff argues that the ALJ should have further developed the record by ordering a consultative examination to confirm plaintiff's testimony that her left knee surgery and physical therapy both "failed" and that she is in severe pain and virtually unable to bend her knee. Docket 14, pp. 7-9. However, plaintiff's own uncorroborated, subjective statements and complaints are insufficient to establish that she has severe impairments. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988).

The Social Security Act, Social Security Regulations and case law all mandate that the ALJ require that subjective complaints be corroborated, at least in part, by objective medical findings. 42 U.S.C. § 423(d)(5)(A) (1985 Supp.); 20 C.F.R. § 404.1529; *Owens v. Heckler,* 770 F.2d 1276, 1281–82 (5th Cir.1985). It is plaintiff's responsibility to offer evidence of her claimed disability; under the applicable regulations, if the plaintiff does not provide sufficient medical or other evidence, a decision must be made based on the information available. *See* 20 CFR § 404.1516 (1986). Although circumstances may require a consultative examination to develop a full and fair record,[12] the decision to require such an examination is discretionary. *See Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987). In *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is

---

[12]Se 20 CFR § 404.1517 (1986).

*necessary* to enable the administrative law judge to make the disability decision." (emphasis in original).  *See also Gannon v. Astrue,*2008 WL 4490738 *11 (N.D. Tex. 2008).

The plaintiff, a lay person with no medical training evident in the record, claims that her left knee surgery and physical therapy "failed." Docket 14, p. 8; Docket 8, pp. 50, 62. The medical evidence, on the other hand, demonstrates otherwise. When she when for her orthopedic followup less than a week after surgery, pain control was good with oral tablets, and the incision was healing well with no signs of infection and minimal swelling. Docket 8, p. 252. Five to six weeks post-surgery, her surgeon found plaintiff's wound was well-healed, and she had eighty-degree range of motion. Docket 8, p. 251. Because she was making slow progress in rehabilitation, the doctor advised her to be more agressive in her physical therapy and exercises. *Id.*

Her physical therapy records demonstrate that plaintiff made steady progress with her range of motion (ROM) following her surgery and during physical therapy. Docket 8, pp. 251 (plaintiff's ROM is 80 degrees at her follow up appointment on 12/20/10); p. 246 (plaintiff's ROM in physical therapy on 1/19/11 is 84 degrees); p. 268 (ROM on 2/1/11 is 90 degrees in physical therapy); p. 290 (physical therapy notes ROM of 98 degrees). However plaintiff discontinued her physical therapy in March 2011 by agreement because her husband was "refusing to respect the privacy of other patients by wandering around. . . instead of waiting in the waiting room." Docket 8, p. 291. In April 2011 she returned to physical therapy and had a ROM of 100 degrees, informed her therapist that she was independent in all functional mobility categories and walked with a normal gait. Docket 8, p. 295.

No medical evidence supports the plaintiff's claims of failed surgery or failed therapy. An

7

ALJ is not required to order a consultative exam to substantiate subjective complaints for which there is otherwise no medical evidence unless "the claimant presents evidence sufficient to raise a suspicion concerning [an] impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). As noted, the evidence in this case did not corroborate the plaintiff's subjective complaints of pain and limitations. Accordingly, the court finds that there existed no evidence in the record that would have necessitate a consultative examination.

    2.    <u>ALJ's Determination of Plaintiff's RFC</u>

Based on evaluation of the medical evidence, the hearing testimony of the plaintiff and the VE, and the record as a whole, the ALJ found that plaintiff retained the residual functional capacity [RFC] to

> lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; she could never climb, kneel, crawl, and could occasionally balance, stoop, and crouch; and she must never work around heights and moving machinery.

Docket 8, pp. 22-23, Finding No. 5. He further went on to find the plaintiff's subjective complaints less than fully credible and that her testimony and allegations of extreme functional limitations were greatly disproportionate to the objective medical evidence. Docket 8, pp. 26. According to plaintiff, if the ALJ found plaintiff's testimony less than credible, and if he accepted that plaintiff recovered nicely from the surgery, then his RFC finding that plaintiff could perform only a reduced range of sedentary work is not logical because finding that plaintiff made a satisfactory recovery should have resulted in a different, even higher range of work that she could perform. Docket 8, pp.10-12. Plaintiff's circular reasoning gives her no help here. If anything, the ALJ's RFC gave plaintiff the benefit of the doubt by finding her more physically limited than she actually is, while concluding that she can still perform work.

The ALJ retains the sole responsibility for determining an individual's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

> RFC is an administrative assessment of the extent to which an individual's medically determinable impairment, including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities.

SSR 96-8p (S.S.A. July 2, 1996). Her physical therapy treatment notes from April 2011 indicate that plaintiff has a normal gait, that she has little pain (1 on a scale of 1-10 n a resting position), and has no limit on weight bearing on her knee. Docket 8, pp. 294-297. Plaintiff was assessed with "slow improvement" in regard to her range of motion and "significantly having less pain" on April 12, 2011. Docket 8, p. 302. Medical records after April 2011 consistently note little pain and only stiffness at therapy sessions. Docket 8, pp. 311, 318. Further, her therapy progresses to jogging and jumping rope. Docket 8, pp. 323-324. Plaintiff testified that she is able to vacuum (Docket 8, p. 60), and she is able to tend to her own needs as well as some, but not all, of her children's needs (Docket 8, p. 59). Her functional disability report from December 2010 reveals plaintiff is able to iron her children's clothes, and make their meals with some help. Docket 8, pp. 160-167.

Other than her own subjective complaints, plaintiff cannot point to any medical or other evidence that is contrary to the ALJ's RFC assessment. Although she argues that the ALJ could have requested a medical source statement from Dr. Patel before making his RFC determination, plaintiff had relatively no treatment history with Dr. Patel and had seen him only one time before the July 2, 2012 hearing. See Docket 8, pp. 354-57. On that occasion plaintiff told him that she wanted him "to write a letter for her that she is totally disabled and not able to walk any at all," had been unable to take her pain medication and "wants some help to get her disability." Docket

9

8, p. 357. Dr. Patel diagnosed plaintiff only with "Left knee osteoarthritis." *Id.* Dr. Patel directed plaintiff to obtain her medical records for him and return for review. *Id.*

The plaintiff's argument that if the ALJ truly had found her not credible he would have assessed her with an AFC at a higher range of functioning is unconvincing. ALJ is not required to rely on plaintiff's unsubstantiated allegations; in fact, "in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p. The plaintiff has not offered any medical evidence to contradict the ALJ's RFC determination. There is substantial evidence in the record to support the ALJ's determination.

       3.     ALJ's Assessment of Plaintiff's Credibility

Plaintiff alleges that the ALJ improperly weighted her testimony and her Adult Function Report. Docket 14, pp. 12-16. She recites numerous quotes from the decision and her hearing testimony to support her argument that although the ALJ made rote findings and cited the proper rulings and regulations, he failed to "express specific reasons for the credibility finding." Docket 14, p. 16.

An ALJ's "determination or decision [regarding credibility] must contain *specific reasons* for the finding on credibility, *supported by the evidence* in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2 (emphasis added). Social Security Ruling 96–7p was written to clarify the procedure to be used in assessing the credibility of a Social Security claimant's statements about symptoms and pain. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims–Assessing the Credibility of an Individual's Statements,* SSR

96–7p, at *1.

The Ruling requires the ALJ to engage in a two-step process. In the first step, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the plaintiff's pain or other symptoms. *Id.* at * 2. If the ALJ determines there exists an underlying physical or mental impairment that could reasonably be expected to produce the plaintiff's pain, he must then evaluate the intensity, persistence, and limiting effects of symptoms to determine the extent to which the symptoms limit her ability to do basic work activities. For this purpose, whenever the plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of those statements based on a consideration of the entire case record. SSR 96–7p, 1996 WL 374186, *2. The Ruling provides in part:

> When assessing the credibility of an individual's statements, the adjudicator must consider:
> (1) the individual's daily activities;
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) factors that precipitate and aggravate the symptoms;
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p, 1996 WL 374186 at *3; *see* 20 C.F.R. § 404.1529(c)(3)(I)-(vii). Further, "the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96–7p, 1996 WL 374186, at *4. "All of the evidence in the

case record, including the individual's statements, must be considered before a conclusion can be made about disability." *Id.* at *5.

In this case, plaintiff's testimony is wildly inconsistent with the treatment notes and medical evidence. For instance, plaintiff testified that she must take her prescription medication for pain, and taking it makes her sleep (Docket 8, pp. 50-51), yet Dr. Patel's notes reflect that she has a full bottle of prescription pain medication that she is unable to take because "it makes her very jittery." Docket 8, p. 357. Plaintiff also testified that she is in excruciating pain (Docket 8, p. 56), that nothing other than keeping still and elevating her leg makes it feel better (Docket 8, p. 57) and that she has to take pain medications twice a day (Docket 8, p. 53). Her physical therapy notes, however, reveal that she has little pain (1 on a scale of 1-10 in a resting position) (Docket 8, pp. 294-297), and on April 12, 2011 that she is having "significantly having less pain." Docket 8, p. 302. Medical records after April 2011 consistently note little pain, with only stiffness at therapy sessions. Docket 8, pp. 311, 318. These contradictions are merely representative and are in no way exhaustive of the numerous discrepancies between plaintiff's representations and the objective evidence in the record.

The ALJ supported his credibility determination by noting inconsistencies between the plaintiff's testimony and the objective evidence in the record. Although he did not reach a result that was favorable to the plaintiff, his determination was well-reasoned and amply supported by the evidence in the record.

4. ALJ's Consideration of Plaintiff's Testimony and Adult Function Report

Plaintiff's argument on this point is a follow-up to the argument in issue number 3 above.

12

Essentially, plaintiff argues that the ALJ mischaracterized her testimony and her Adult Function Report (Docket 8, pp. 160-167). For the same reasons stated above, this argument also fails.

     5.     <u>Consideration of New and Material Evidence</u>

When new evidence becomes available after the ALJ's decision, and it is likely that this new evidence would change the outcome of the decision, a remand is appropriate so that the new evidence can be considered. 42 U.S.C. § 405(g); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994). To justify a remand, 42 U.S.C. § 405(g) requires that the evidence be "new" and "material" and that the plaintiff show "good cause" for failing to provide the evidence at the original proceedings. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). This court may only review the new evidence to determine if remand is appropriate. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

The plaintiff's attorney submitted new medical evidence to the Appeals Council from Dr. Daneca DiPaolo from April 2013, almost four months after the ALJ's decision. Docket 8, pp. 359-364. Plaintiff argues that Dr. DiPaolo's recommendation that plaintiff should "not do activities that require squatting or kneeling" bolsters her credibility and should have resulted in remand to the ALJ. The Appeals Council considered the June 6, 2011 MRI and made it a part of the record, but found that it did not provide a basis for changing the ALJ's decision. Docket 11, 6-10. Plaintiff argues that the court must remand this case because the MRI likely would have changed the ALJ's decision.

There is no question that he Appeals Council received and considered Dr. DiPaolo's records. Docket 8, pp. 1-4. Dr. DiPaulo found that plaintiff has a severe impairment of "left knee osteoarthritis" and that "should not do activities that require squatting or keeling. Docket 8, p.

13

363. He advised her to to take a 30-minute walk daily and do straight leg raises. *Id.* Rather than changing the ALJ's decision, Dr. DiPaolo's records dovetail nicely with the ALJ's RFC finding that plaintiff retains the residual functional capacity to perform a reduced range of sedentary work but "could never climb kneel or crawl and could occasionally balance, stoop and crouch. . . ." Docket 8, p. 23.

To be "material," evidence cannot merely be cumulative of what is already in the record. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). In sum, even though the evidence from Dr. DiPaolo may be new in a temporal sense, it is not necessarily "material" and does not appear to be different from other evidence already in the record. Even if the plaintiff had "good cause" for not submitting it before the hearing, the treatment notes cannot be considered "material" because they merely underscore the evidence of plaintiff's functional ability that is already in the record. There is no proof that the notes establish any limitations not addressed by the ALJ's determination of plaintiff's RFC. Dr. DiPaolo's notes do not change the substantial evidence in the record that supports the ALJ's decision. *Prince v. Chater*, 77 F.3d 479 (5th Cir. 1996).

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, the court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 18th day of November, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE